Mutual Benefit Life Insurance Company, Appellee, v. Anna Schubert, Appellee, et al., Appellant.

INSURANCE: Assignment of Proceeds—Absence of Consideration. An assignment of the proceeds of a life insurance policy is a nullity when not supported by a consideration. (See Book of Anno., Vol. 1, Sec. 9441, Anno. 27 *et seq.*)

Headnote 1:   5 C. J. p. 931; 37 C. J. p. 589.

*Appeal from Clay District Court.*—James DeLand, Judge.

March 16, 1926.

Controversy over the proceeds of a life insurance policy issued by plaintiff company on the life of Lorenz Schubert. The insurance company paid the money into court, and the contention arises between the surviving spouse, Anna Schubert, and the First National Bank of Hartley, Iowa, on a cross-petition. The district court entered decree in favor of Anna Schubert, and the bank appeals.—*Affirmed.*

*T. E. Diamond* and *J. W. Cory, Jr.,* for appellant.

*Lane & Waterman,* for plaintiff, appellee.

*J. P. Goble* and *W. H. Morling,* for appellee Anna Schubert.

ALBERT, J.—Lorenz Schubert died on March 12, 1924. On his life there was outstanding the policy of insurance involved herein, which had a face value of $10,000. After deductions were made for a loan, etc., the balance due on the policy was $8,681.53. Anna Schubert, appellee herein, was the beneficiary under said policy.

On March 18, 1924, the appellant bank procured from Anna Schubert a writing directed to the insurance company, authorizing them to pay to the First National Bank of Hartley, out of the proceeds of said policy, the sum of $5,083.61, with interest thereon, as payment for a certain note therein described. It is by virtue of this writing that the bank seeks to hold the above amount from the proceeds of said policy. Within a few days thereafter, Anna Schubert, through her attorneys, notified the insurance company that she declared the aforesaid writing invalid and of no effect; that it was procured by fraud; that the note referred to therein was a forgery; and that there was a total lack of consideration for said assignment. She forbade the company to pay any sum whatever thereon, and demanded that the proceeds of the policy be paid to her. Upon receipt of the notice, the company refused to make payment to the assignee or to anyone else, and on April 24, 1924, filed a bill of interpleader herein, and paid the net proceeds of said policy into court, to abide the result of the litigation between Anna Schubert and the bank.

A statement of some of the facts leading up to the making of the written instrument in controversy is necessary to a fair understanding of the questions involved. It appears that Lorenz Schubert had been a customer of the bank's for several years prior to his death. In 1920, he was in financial straits, and his account was tied up under garnishment. Thereupon, through an agreement with his wife and the bank, he opened a new account in his wife's name for whatever business transactions he might have with the bank after that time. He drew checks against this account, and they were honored and paid. He borrowed money from the bank, and made his own notes

therefor, and some money was borrowed, and the notes signed by the wife and guaranteed by the husband.

Shortly after Lorenz Schubert's death, a representative of the bank called on Mrs. Schubert and presented to her a note for $5,083.61, purporting to have been signed by her. This note seems to have been a renewal of three other notes of previous date purporting to have been signed by her. She denies the signature of all of the notes; and, so far as we are able to find from the record, there is no evidence to controvert her denial. On the urgent solicitation of the bank, she was induced to sign the writing above referred to, ordering the insurance company to pay out of the proceeds of the policy the amount due on the note. She claims that her mental and physical condition at the time was such that advantage was taken of her, and that there was no consideration for the aforesaid writing. These are the questions which were tried out in the lower court.

We pretermit any discussion of the troublesome question of whether or not a forged signature can be ratified, and turn to the crux of this case. As submitted in the lower court, it turned wholly on the question of whether there was any consideration for the writing made by Anna Schubert to the bank. The bank insists that the writing contains no recitation of the consideration, and that, therefore, parol evidence was admissible to show the actual consideration. Taking the bank at its word on this proposition, we turn to the evidence, as this seems to be wholly a fact question.

It appears that the Schuberts had a son, William, who was indebted to the Hartley bank, the indebtedness being represented by a note and chattel mortgage on his personal property. He was engaged in farming operations, and wished to move to a farm in Minnesota. The chattel mortgage contained the usual provisions relative to the removal of the property from the state.

At the time of making this writing, there were present at the home of the Schuberts the appellee Anna Schubert, her sons William and Otto, a daughter by the name of Mrs. Lillian Skalitzsky, Frank A. Cook, an attorney from Spencer, and one Broders, representing the bank, who was urging Mrs. Schubert to make the writing assigning to the bank a part of the in-

surance money, to secure the note above specified. After conference with her family, Mrs. Schubert, while denying liability on the note, said that she wanted to pay it. Broders testifies that, before she signed the writing directing the insurance company to pay to the bank the amount of the note, she said to him: "If I sign this, will you see that Bill gets moved to Minnesota?" He replied: "I will, Mrs. Schubert, see that Bill gets up there somehow." The bank rests its claim of a consideration upon this conversation, and says that it was the inducement which led Mrs. Schubert to sign the note, and amounted to an agreement that they would waive their rights under the clause in the chattel mortgage and permit William to move his property to Minnesota; that, therefore, this is a consideration for the writing made by Mrs. Schubert.

Cook testifies that the conversation was conducted largely in German, the Schuberts and Broders speaking German, which language Cook did not speak or understand. The only thing that he recalls is that "Minnesota" was spoken of. Mrs. Schubert and her children all deny positively that there was anything whatever said about William's moving to Minnesota, or that there was any agreement made that Broders was to permit, aid, or assist William in moving to Minnesota. They are somewhat corroborated by the testimony of Broders himself, for he says that William spoke to Mrs. Schubert, and she said:

"No, I have got enough to take care of, and since I am paying my note at the bank, you will have to arrange with Mr. Broders to move your property and family to Minnesota."

At another place he says that Mrs. Schubert said to William:

"No, my boy, I am going to take care of my note here, and you will have to arrange with Mr. Broders to move your stuff to Minnesota."

He further testifies that, when Mrs. Schubert refused to aid William, he (Broders) said:

"All right, boys, we will go back to Hartley and fix up a new mortgage covering the personal property that you have left there which you expect to move to Minnesota, and fix it up, and you can go to Minnesota just as soon as it is signed up."

This conversation seems to have taken place before the

one at which it is claimed that Mrs. Schubert signed the writing in controversy.

Under the situation in this case, we are satisfied that the weight of the evidence is with Mrs. Schubert. The interest of witnesses is equal on both sides. There seems to be nothing in the record to impeach the credibility of the witnesses testifying on behalf of Mrs. Schubert, and some of the testimony of Broders tends to corroborate them. The district court rightfully concluded that there was no consideration for this writing; and this being so, it was of no validity, and Anna Schubert was entitled to the proceeds of the insurance policy. Further than this, a general survey of the case made by the bank does not appeal to the conscience of a chancellor in equity. This woman had no business experience, and she merely acquiesced to the request of her husband to open a bank account in her name. She knew nothing whatever about it, did not know the difference between a check and a note, never drew any checks in her life, and never had any dealings otherwise with the bank or the business world. Her husband died suddenly, and in the hour of her distress and grief this matter was thrust upon her, accompanied by representations by the bank that there was an abundance of money on hand to make her comfortable for the future (which proved to be false); and we feel that she was overreached in the matter.

The decision of the district court was right, and the case is affirmed.—*Affirmed.*

DE GRAFF, C. J., and EVANS and STEVENS, JJ., concur.

MORLING, J., not participating.